## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAHEEM JOHNSON,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:18-cv-203** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **DEPUTY TRITT,** *et al.*, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This matter is before the Court pursuant to the motion for summary judgment filed by Defendants Deputy Tritt ("Tritt"), Superintendent Brittain ("Brittain"), Nurse Holly ("Holly"), C.O. Dowd ("Dowd"), Superintendent Delbalso ("Delbalso"), C.O. Mros ("Mros"), Bowser ("Bowser"), Captain Moore ("Moore"), Secretary Wetzel ("Wetzel"), and the Department of Corrections ("DOC").[1]  (Doc. No. 62.)[2]  After receiving an extension of time (Doc. Nos. 74, 75), *pro se* Plaintiff Raheem Johnson ("Plaintiff") filed his response on March 13, 2020 (Doc. No. 79). Defendants filed a reply brief on March 26, 2020.  (Doc. No. 81.)  On April 15, 2020, Plaintiff filed a motion for an extension of time to file a surreply.  (Doc. No. 82.)

---

[1] Plaintiff named Brittian and Delbaso as Defendants in his complaint.  However, Defendants' filings indicate that the correct spelling of these Defendants' names is Brittain and Delbalso.  The Court, therefore, will direct the Clerk of Court to amend the docket to reflect the correct spelling.

[2] Plaintiff has also named Dr. Pandya as a Defendant in the above-captioned case.  Dr. Pandya filed his answer to the complaint on February 18, 2020.  (Doc. No. 77.)  Plaintiff and Dr. Pandya, therefore, are currently engaged in discovery, which closes on August 18, 2020.  *See* M.D. Pa. L.R. 26.4.

The Court will deny Plaintiff's motion (Doc. No. 82), concluding that a surreply is not necessary for resolution of the motion for summary judgment. Accordingly, the motion for summary judgment is ripe for disposition.

## I.   BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution in Chester, Pennsylvania ("SCI Chester"), initiated the above-captioned action in January 2018 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 5.) On January 26, 2018, the Eastern District of Pennsylvania transferred the action to this Court for further proceedings. (Doc. No. 3.)

Plaintiff alleges that he arrived at SCI Frackville on December 22, 2015. (Doc. No. 5 ¶ 17.) After intake, he was sent to a housing unit and found that he had a "hard time going up the hills a[t] SCI Frackville, due to [his] previous knee injuries." (*Id.* ¶ 18.) Plaintiff subsequently submitted a sick call request. (*Id.* ¶ 19.) Physician's Assistant Iannuzzi prescribed medication "to help relief some pain and swelling of [Plaintiff's] knees." (*Id.*) On February 1, 2016, Plaintiff's "left knee completely bucked and gave out." (*Id.* ¶ 20.) He filed another sick call request and was seen by Iannuzzi on February 4, 2016. (*Id.* ¶ 21.) Iannuzzi evaluated Plaintiff's

knees and prescribed a permanent walker to help Plaintiff "keep stable while walking up and down the hills." (*Id.*)

Plaintiff alleges that his medication was stopped by Defendant Pandya after thirty (30) days had passed. (*Id.* ¶ 23.) Plaintiff avers that Defendant Pandya stopped his medication because of Plaintiff's actions of submitting requests and filing grievances. (*Id.*) On April 4, 2016, Plaintiff was called to the medical department, where he was told that his walker was being taken away and he would receive a cane in its place for thirty (30) days. (*Id.* ¶ 25.) Plaintiff was also advised to do workouts in his cell. (*Id.*) Plaintiff refused the workouts, alleging that he was in too much pain and "could hardly walk let alone do a workout." (*Id.*)

Plaintiff experienced more pain in his knees after the walker was taken away. (*Id.* ¶ 26.) The pain "severely limited and impaired [his] ability to walk, sleep, and perform manual task[s]." (*Id.*) Plaintiff asked to be provided a chair "to use to shower as [he] could no longer stand without a device to help him." (*Id.* ¶ 27.) He also sought permission to use a chair while he used the phone and asked to be provided pain medication again. (*Id.*) His requests were denied, and Plaintiff filed a grievance. (*Id.* ¶¶ 27-28.)

On June 29, 2016, Plaintiff filed an Americans with Disabilities Act ("ADA") request after being told that he could do so by the facility manager in his response to

Plaintiff's grievance.   (*Id.* ¶¶ 29-30.)   Defendant Holly also responded to his grievance, telling Plaintiff that his request for a chair needed to be addressed with his unit management team.   (*Id.* ¶ 31.)   Plaintiff alleges that Defendant Dowd continued to deny him a chair, telling Plaintiff that she had asked medical and the deputy, both of which had to approve the chair.   (*Id.* ¶ 32.)   Plaintiff avers that he "further injured himself while showering, as a direct result of being denied [use of] a chair in a non-[handicap] accessible prison."   (*Id.* ¶ 33.)

Plaintiff was sent out to see a therapist on February 17, 2017.   (*Id.* ¶ 34.)   The therapist noted that Plaintiff was in a wheelchair and that his knees were swollen.   (*Id.*)   Plaintiff told the therapist that he was "in sever[e] pain."   (*Id.*)   The therapist suggested that Defendant Pandya provide Plaintiff with pain medications, crutches, and new braces because Plaintiff's "old brace was broken and wor[n] out."   (*Id.*)   Defendant Pandya, however, told Plaintiff that he would not receive crutches and pain medication.   (*Id.* ¶ 35.)

On February 22, 2017, Plaintiff was called to medical to pick up his new brace from Defendant Pandya.   (*Id.* ¶ 36.)   Defendant Pandya "continued to deny [him] crutches, or pain medication, or anything to reduce swelling."   (*Id.*)   On February 24, 2017, Plaintiff filed a grievance about the denial of crutches, as well as his pain and the inability to use a chair while showering.   (*Id.* ¶ 37.)   He also "continued his

4

argument to be placed in a handicap accessible prison." (*Id.* ¶ 38.)  On March 1, 2017, Plaintiff received crutches, but his other requests were denied.  (*Id.* ¶ 39.)

On April 11, 2017, Plaintiff fell again in the shower.  (*Id.* ¶ 40.)  He "felt there was something much more damaged after this fall" because he was in severe pain and had more trouble walking, even with crutches.  (*Id.* ¶ 41.)  Plaintiff avers that his pain became so severe that he had to stop going to the dining hall for breakfast, lunch, and dinner from February 2016 until June 12, 2017. (*Id.* ¶ 42.)  Plaintiff avers that he was unable to travel up and down the hills to and from the dining hall because the walking caused his knees to give out.  (*Id.*)  Plaintiff maintains that on April 11, 2017, his ADA request was denied with a note that his disability was already reasonably accommodated.  (*Id.* ¶ 72.)

Plaintiff maintains that in August 2016, he requested to go to the gym "in order to try to build the muscle tone in [his] knees and ankles." (*Id.* ¶ 44.)  On April 24, 2017, Plaintiff was informed that an exercise wheel had been ordered for him to use.  (*Id.* ¶ 45.)  That same day, he received a response to a grievance from the superintendent stating that Defendant Pandya was still evaluating whether Plaintiff needed an MRI.  (*Id.* ¶ 46.)  The response also stated that Plaintiff had been seen by a specialist and received physical therapy.  (*Id.*)  Plaintiff avers that he was never seen by a patella specialist and never received the exercise wheel.  (*Id.* ¶¶ 47-48.)

5

On April 12, 2017, Plaintiff received a brace for his right knee.  (*Id.* ¶ 50.)
Plaintiff also underwent MRIs of both knees.  (*Id.* ¶ 51.)  Plaintiff's left knee showed
mild effusion of the joint, a "laterally subluxed" patella, and patellofemoral arthritis.
(*Id.* ¶ 52.)  The MRI also noted "chronic lateral patella instability."  (*Id.*)  Plaintiff's
right knee also showed signs of moderate patellofemoral arthritis.  (*Id.* ¶ 53.)

Plaintiff avers that staff at SCI Frackville were made aware of his difficulties.
(*Id.* ¶ 63.)  Defendants, however, "made no accommodations to enable Plaintiff to
receive his meals in his cell as was done for others."  (*Id.* ¶ 64.)  Plaintiff informed
Defendant Tritt of his difficulties and asked to be transferred to a prison that could
accommodate his disabilities.  (*Id.* ¶ 66.)  Defendant Tritt responded by telling
Plaintiff that OPM decides where inmates are placed and that medical would need
to support his "need for accommodations other [than] the norm."  (*Id.* ¶ 67.)

Plaintiff filed a grievance which was upheld in part to the extent that medical
staff would direct that Plaintiff be transferred to a single-level facility.  (*Id.* ¶ 56.)
Plaintiff was transferred to SCI Mahanoy on June 12, 2017.  (*Id.* ¶ 57.)  He avers
that on August 11, 2017, Defendant Mros denied him use of the handicap-accessible
shower because he was upset that Plaintiff "had just mere days before filed a
grievance on [him] for denying Plaintiff . . . a shower."  (*Id.* ¶ 74.)  Plaintiff maintains
that he fell in the non-handicap-accessible shower "when his crutches slipped from

6

up under him." (*Id.* ¶ 75.)  He landed on the ledge of the shower, hurting his knees, back, and neck.  (*Id.*)  Staff eventually removed Plaintiff from the shower and placed him in a wheelchair.  (*Id.* ¶ 76.)  Plaintiff claims that he only received a few Motrin and was charged $10.00 for the medical service.  (*Id.* ¶ 77.)  Plaintiff grieved the issue, and his grievance was denied at all levels.  (*Id.* ¶¶ 80-84.)

Based on the foregoing, Plaintiff alleges that Defendants violated his Eighth Amendment rights by demonstrated deliberate indifference to his medical needs.  (*Id.* ¶¶ 91-92.)  Plaintiff also alleges that Defendants violated his rights under the ADA, the Rehabilitation Act, and the constitution and laws of Pennsylvania by failing to accommodate his disability and provide proper medical care.  (*Id.* ¶¶ 93-95.)  Plaintiff also suggests that Defendant Mros violated his First Amendment right by retaliating against him for filing a grievance.  Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.  (*Id.* at 19.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S.

8

317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White*, 826 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.* (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."

L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[3]

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.*  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*

      Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts.  (Doc. No. 63.)  While Plaintiff's brief in opposition to the motion for summary judgment contains a response to Defendants' statement of facts (*see* Doc. No. 79 at 19-22), Plaintiff has not fully complied with Local Rule 56.1 in that he failed to specifically respond to all the numbered paragraphs in Defendants' statement of material facts.  Because of this, Defendants ask that the Court strike Plaintiff's statement.  (Doc. No. 81 at 10-12.)  However, to the extent Plaintiff's statement does not respond to the numbered paragraphs in Defendants' statement, those numbered paragraphs will be deemed admitted.  *See, e.g.*, *Liddick v. Tritt*, No. 1:14-CV-01813, 2017 WL 4211051, at *1 (M.D. Pa. Aug. 31, 2017) (concluding same), *Report and Recommendation adopted*, 2017 WL 4180111 (M.D. Pa. Sept. 21, 2017); *Joyner v. District of Columbia*, No. 04-cv-489, 2009 WL 2224757, at *3 n.5 (M.D. Pa. July 23, 2009) (deeming the moving party's statement of facts admitted where the non-moving party's response failed to provide individual responses to each of the numbered paragraphs contained therein).  Plaintiff's verified complaint, however, may be treated as an affidavit in opposition to Defendants' motion for summary judgment.  *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent

Plaintiff was incarcerated at SCI Frackville from December of 2015 until June of 2017.  (Doc. No. 63 ¶ 1.)  Plaintiff had pre-existing knee injuries when he arrived at SCI Frackville.  (*Id.* ¶ 2.)  "Plaintiff had a knee brace, which was replaced while he was at [SCI] Frackville."  (*Id.* ¶ 3.)[4]  In June of 2017, Plaintiff was transferred to SCI Mahanoy.  (*Id.* ¶ 4.)

During the relevant time, Defendants Tritt and Brittain responded to Plaintiff's grievances and inmate requests.  (*Id.* ¶¶ 5-6.)  Defendant Delbalso responded to his grievance appeals.  (*Id.* ¶ 7.)  Defendant Bowser "assisted in obtaining an order to have the Plaintiff transferred to a single-level facility."  (*Id.* ¶ 8.)  Plaintiff also "saw medical staff on numerous occasions, receiving a walker, a cane, a knee brace, crutches, and pain medication at various times."  (*Id.* ¶ 10.)[5]  On

---

of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."). Accordingly, the Court sets forth the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

[4] Plaintiff avers that his knee brace was not replaced until after February 17, 2017, when he saw a therapist.  (Doc. No. 79 at 19.)  The therapist recommended that Plaintiff receive crutches, pain medication, and two (2) new knee braces, but he "was dismissed without receiving any of the items."  (*Id.*)  Plaintiff received a brace for his right knee on February 22, 2017.  (*Id.* at 19-20.)

[5] Plaintiff maintains that his "walker was removed for no reason when [it] was to be permanent." (*Id.* at 20.)  He avers that Defendants Pandya and Holly "had a part in removing [his] walker" and that he "only received crutches after he filed a grievance."  (*Id.*)  Plaintiff states further that he did not receive pain medication at times and that Defendant Pandya retaliated against him for filing

August 11, 2017, Plaintiff was "given the choice of either using a non-handicapped shower or not showering; [he] chose to use the non-handicapped shower and slipped in that shower." (*Id.* ¶ 11.)[6]

## IV.   DISCUSSION

### A.   Claims Pursuant to 42 U.S.C. § 1983[7]

#### 1.   Deliberate Indifference to Medical Needs

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).   To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate

---

grievances "by removing [his] medication and as long as [P]laintiff remained under [Defendant Pandya's] care [he] never received any more medication." (*Id.* at 20-21.)

[6] Plaintiff avers that he had to choose between taking a shower "after not having a shower for days" or waiting until the next Monday to take a shower. (*Id.* at 21.) Plaintiff maintains that Defendant Mros forced him to make this decision in retaliation for Plaintiff filing a grievance "against Mros 4-days prior for Mros denying [P]laintiff a shower." (*Id.*)

[7] As noted above, Plaintiff has named the DOC as a Defendant in this matter. Moving Defendants, however, have not specifically addressed Plaintiff's claims against the DOC in their brief supporting their motion for summary judgment. Nevertheless, the DOC is "entitled to Eleventh Amendment immunity from suit and [is] not [a] person[] subject to suit under 42 U.S.C. § 1983. *See Foye v. Wexford Health Sources, Inc.*, 675 F. App'x 210, 2510 (3d Cir. 2017) (citations omitted). Accordingly, the DOC is entitled to summary judgment with respect to Plaintiff's § 1983 claims.

deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

13

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.* Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002);

14

*Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In the instant case, Defendants do not challenge whether Plaintiff had a serious medical need.  Rather, they assert that Defendants Tritt, Brittain, Delbalso, Bowser, Moore, and Wetzel are entitled to summary judgment because they were not personally involved in the alleged violations of Plaintiff's constitutional rights. (Doc. No. 64 at 4-7.)  They maintain further that Defendants Holly, Dowd, and Mros are entitled to summary judgment because they did not demonstrate deliberate indifference to Plaintiff's medical needs.  (*Id.* at 8-9.)  The Court considers each argument in turn below.

### a.   Defendants Tritt, Brittain, Delbalso, Bowser, Moore, and Wetzel

Under § 1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1998)).  Liability "cannot be predicated solely on the operation of *respondeat superior*."  *Id.*  In other words, defendants "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 120-08.  Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation.  *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947

16

(E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate-plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Rode*, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010 (quotation and alteration marks omitted).  As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it.  *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

With respect to the first, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Plaintiff alleges that Defendant Wetzel "failed to establish or implement adequate policies, practices and procedures, to protect and accommodate individuals with injuries and/or disabilities and to provide them with adequate medical care." (Doc. No. 5 ¶ 86.)  As noted above, a plaintiff may establish supervisory liability if he demonstrates that a supervisor established and maintained a policy, practice, or custom that directly caused the constitutional harm. *Santiago*, 629 F.3d at 129 n.5. Here, however, Plaintiff asserts the opposite—that his constitutional rights were violated because of the lack of such policies.  He maintains that Defendant Wetzel had a "duty to have a policy in place to keep correctional officers from forcing handicap inmates to [choose] between no shower or risk of injury." (Doc. No. 79 at 7.)  Plaintiff, however, has not demonstrated that Defendant Wetzel knew of any unreasonable risk and was indifferent to that risk by failing to implement such a policy. *See Merring*, 558 F. Supp. 2d at 547.  Moreover, Plaintiff fails to establish

18

that Defendant Wetzel personally participated in any alleged constitutional violation or approved of it.  *See C.N.*, 430 F.3d at 173.  Accordingly, the Court will grant Defendant Wetzel summary judgment with respect to Plaintiff's Eighth Amendment claims.

Plaintiff seeks to hold Defendants Tritt, Brittain, Delbalso, and Moore liable based upon their responses to his grievances and grievance appeals.  As noted above, these Defendants' participation in review of Plaintiff's grievances and appeals does not establish personal involvement in the alleged constitutional violations.  *See Pressley*, 266 F. App'x at 218.  In his brief opposing summary judgment, Plaintiff avers that Defendants Tritt, Brittain, Delbalso, and Moore should be held liable because they failed to take corrective action after receiving several grievances from him regarding alleged recurring violations of his rights, particularly his belief that he continued to be denied adequate medical care for his disabilities.  (Doc. No. 79 at 7-9.)  Several courts within the Third Circuit have concluded that supervisory officials may be held liable stemming from the review of a grievance alleging an ongoing violation because the official "is personally involved in that violation because he is confronted with a situation he can remedy directly."  *Mayo v. Oppman*, No. CV 17-311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), *Report and Recommendation adopted*, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018); *Talley v.*

*Wetzel*, No. 2:18-cv-230, 2018 WL 6198364, at *2-3 (W.D. Pa. Nov. 28, 2018) (concluding that the inmate plaintiff had stated plausible supervisory liability claims because he submitted grievances for each day he was subjected to the challenged conditions); *Gibbs v. Univ. Corr. Healthcare*, No. CV 14-7138 (MAS) (LHG), 2016 WL 6595916, at *2 (D.N.J. Nov. 7, 2016); *Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012).

Even if the Court were to conclude that Plaintiff presented Defendants Tritt, Brittain, Delbalso, and Moore with grievances intended to correct ongoing violations, the record before the Court leads to a conclusion that these Defendants were not deliberately indifferent to Plaintiff's medical needs. As noted *supra*, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* Here, the record before the Court indicates that Defendants Tritt, Brittain, Delbalso, and Moore relied upon the opinions and records of Plaintiff's medical providers as to the adequacy of his medical care when responding to his grievances. Plaintiff has not demonstrated that

these Defendants had reason to believe or actual knowledge that his medical providers were mistreating or failing to treat him. The Court, therefore, will grant summary judgment to Defendants Tritt, Brittain, Delbalso, and Moore as to Plaintiff's Eighth Amendment claim.

Finally, with respect to Defendant Bowser, Plaintiff's sole allegation is that she, along with Defendants Holly and Pandya, had agreed to a medical order directing Plaintiff's transfer to a "single level prototypical facility." (Doc. No. 5 ¶ 56.) The Court agrees with Defendants that it "would be illogical to hold Defendant Bowser liable for helping the Plaintiff to obtain the very relief he sought." (Doc. No. 64 at 7.) In response, Plaintiff asserts that he "believes" that Defendant Bowser was the one who denied his ADA request form. (Doc. No. 79 at 9.) He argues that "without further discovery and a deposition, [he] can't be sure of [Defendant] Bowser['s] full involvement." (*Id.*) Plaintiff's argument, however, goes toward his claims for relief under the ADA and the Rehabilitation Act, not his claims regarding the denial of adequate medical care pursuant to § 1983.[8]

---

[8] Plaintiff never moved for an extension of the discovery period, nor has he filed a declaration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure explaining why discovery is necessary. Rule 56(d) "allows, in certain circumstances, for supplemental discovery after a motion for summary judgment has been filed." *See Hicks v. Johnson*, 755 F.3d 738, 743 (1st Cir. 2014) (citing Fed. R. Civ. P. 56(d)). "Rule 56(d) states that '[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

Accordingly, the Court will grant summary judgment with respect to Plaintiff's Eighth Amendment claims against Defendant Bowser.

### b.      Defendants Holly, Dowd, and Mros

Plaintiff next alleges that Defendants Holly, Dowd, and Mros demonstrated deliberate indifference to his medical needs.  Plaintiff maintains that Defendants Holly and Mros denied him use of a chair to use while talking on the phone or showering.  (Doc. No. 5 ¶¶ 31-32.)  He also appears to suggest that Defendant Mros was deliberately indifferent by forcing him to choose between using a non-handicapped shower or not showering at all.  (*Id.* ¶¶ 74-75.)

Defendants Holly, Dowd, and Mros are not medical personnel.  *See Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (noting that CHCAs, such as Defendant Holly, "are undisputably administrators, not doctors").  The record before the Court indicates that Plaintiff was under the care of medical personnel at SCI Frackville when Plaintiff asked Defendants Holly and Dowd for the use of a chair.  However, because neither of them is a physician, Defendants Holly and Dowd "can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison

---

declarations or to take discovery; or (3) issue any other appropriate order.'"  *Shelton v. Bledsoe*, 775 F.3d 554, 565-66 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(d)).

doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1991); *see also Foreman v. Bureau of Prisons*, No. 06-1274, 2007 WL 108457, at *4-5 (3d Cir. Jan. 16, 2007) (concluding that non-medical personnel were entitled to qualified immunity regarding inmate's Eighth Amendment claim that he was deprived of a specific shower chair).  Plaintiff has not demonstrated that these Defendants had reason to believe or actual knowledge that his medical providers were mistreating or failing to treat him.  Likewise, Plaintiff has not demonstrated that Defendant Mros had reason to believe or actual knowledge that medical providers at SCI Mahanoy were mistreating or failing to treat him.  *See Spruill*, 372 F.3d at 236.  Accordingly, the Court will grant summary judgment to Defendants Holly, Dowd, and Mros with respect to Plaintiff's Eighth Amendment claims.

### 2.    Retaliation

Plaintiff also alleges that Defendant Mros violated his rights under the First Amendment by denying him use of a handicap-accessible shower, while Plaintiff was on crutches, in retaliation for Plaintiff filing a grievance against Defendant Mros "just mere days before."  (Doc. No. 5 ¶ 74.)  To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must

23

demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link."  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

24

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

The filing of grievances constitutes protected activity. *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011). Defendants argue, however, that Plaintiff has not established either that adverse action was taken by Defendant Mros against him or the existence of a causal connection between such adverse action and Plaintiff's protected activity. (Doc. No. 64 at 10-12; Doc. No. 81 at 7-10.) The Court considers these arguments in turn below.

### a.   Adverse Action

To be actionable under § 1983, the adverse action "need not be great" but "must be more than *de minimus*." *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Moving Defendants assert that Plaintiff cannot establish adverse action because: (1) "being denied a single shower does not rise to the level of an adverse action" and (2) "Plaintiff was not even denied a shower; the evidence of record

indicates that he was given the choice of showering in the non-handicapped shower or not showering on that particular day." (Doc. No. 64 at 10.) The Court agrees that the loss of a single shower is too *de minimis* to constitute adverse action "because it would not deter a similarly situated individual from exercising his or her constitutional rights." *Coit v. Garman*, No. 1:17-cv-1438, 2019 WL 2612703, at *9 (M.D. Pa. June 26, 2019); *see also Phelan v. Durniak*, No. 9:10-CV-666 (FJS/RFT), 2014 WL 4759937, at *16 (N.D.N.Y. Sept. 24, 2014); *Hursey v. Klinesmith*, No. 1:10-cv-1277, 2011 WL 2580403, at *7 (W.D. Mich. June 28, 2011). In the instant case, however, Plaintiff claims that Defendant Mros retaliated against him by giving him the choice of either not showering or using the non-handicapped shower. Similar "Hobson's choices" have been presumed to constitute sufficient adverse action for purposes of a retaliation claim. *See Johnson v. Piper*, No. 2:14-cv-173-RWS-JCF, 2017 WL 11493976, at *7-8 (N.D. Ga. Aug. 25, 2017) (assuming that being provided the "Hobson's choice" of "confinement in Max-Iso or separation from his legal materials" was adverse action").

Defendants maintain that "even if denial of a single shower were considered an adverse action," qualified immunity shields Defendant Mros from liability because "it cannot reasonably be said that this right was 'clearly established." (Doc. No. 81 at 8; Doc. No. 64 at 11-12.) "The doctrine of qualified immunity protects

government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This immunity "balances two important interests—the need to hold public officials accountable when they exercise their power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244).

Determining whether qualified immunity applies involves the following two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Defendants assert that "[t]he question here is whether forcing a prisoner to use either a non-handicapped shower or to go without showering at all is 'beyond debate' as a constitutional question" and aver that "the answer to this question is far from settled." (Doc. No. 64 at 12.) Defendants, however, misconstrue the nature of

27

the right at issue for purposes of Plaintiff's retaliation claim.  The Third Circuit has recognized that, for purposes of a retaliation claim, "an action which on its own would not violate the Constitution could be actionable if motivated by retaliation." *Collazo v. Rozum*, 646 F. App'x 274, 276 n.5 (3d Cir. 2016).  In the instant case, the question is not whether Defendant Mros violated Plaintiff's rights by forcing him to choose between using a non-handicapped shower or not showering at all.  Rather, the question is whether Defendant Mros retaliated against Plaintiff for filing a grievance against him.  It is clearly established that such action, if proven, is not lawful.  *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)).  The Court, therefore, concludes that Defendants are not entitled to qualified immunity and finds that Plaintiff has satisfied the second prong for his retaliation claim.

### b.      Causal Connection

While causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence."  *Watson*, 834 F.3d at 422.  Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  *Id.*

28

Defendants assert that Plaintiff cannot demonstrate causation because Defendant Mros was not named in Plaintiff's grievance and because Plaintiff "points to no evidence showing that Defendant Mros actually knew about the grievance." (Doc. No. 81 at 9.)  While Defendants are correct that Plaintiff did not refer to Defendant Mros by name in his initial grievance submitted on August 7, 2017, Plaintiff later learned that Defendant Mros had been involved in denying him a shower on that date.  (Doc. No. 81-1.)  Moreover, as noted *supra*, Plaintiff's verified complaint may be treated as an affidavit in opposition to Defendants' motion.  *See Reese*, 760 F.2d at 76; *Boomer*, 2009 WL 2099778, at *2 n.4.  In his complaint, Plaintiff avers that Defendant Mros was upset that Plaintiff had filed a grievance against him and, therefore, made Plaintiff choose between using the non-handicapped shower or not showering at all on August 11, 2017.  (Doc. No. 5 ¶¶ 74-75.)  Furthermore, in his deposition, Plaintiff averred that Defendant Mros was made at him and "made [him] get in the non-handicapped shower and put a person that wasn't handicapped in a handicapped shower."  (Doc. No. 63-1 at 39-40.)

In light of the evidence presented by the parties, it is the Court's view that there are genuine issues of material fact regarding whether the adverse action Plaintiff suffered is causally connected to Plaintiff's grievance against Defendant Mros.  Plaintiff's averments, as well as the passage of four (4) days between when

Plaintiff filed a grievance against Defendant Mros and when he maintains Defendant Mros made him choose between using the non-handicapped shower or not showering at all, could permit a reasonable juror to conclude that Defendant Mros gave Plaintiff this choice because of Plaintiff's conduct in filing a grievance against him.  Such issues of fact, however, will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage.  *See Anderson*, 477 U.S. at 252.  Accordingly, the Court will deny summary judgment as to Plaintiff's retaliation claim against Defendant Mros.

### B.   Claims Under the ADA and the Rehabilitation Act

Plaintiff also alleges that Defendants violated Title II of the ADA as well as the Rehabilitation Act by failing to provide the proper accommodations for his disabilities.  (Doc. No. 5 ¶ 94.)[9]  Title II of the ADA, "which prohibits 'a public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmate in state prisons." *Pa. Dep't of*

---

[9] Plaintiff also claims that Defendants' actions violated Title III of the ADA.  (Doc. No. 5 ¶ 94.) Title II states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  42 U.S.C. § 12182.  Public accommodations include service establishments such as hospitals, gas stations, laundromats, etc., "if the operations of such entitles affect commerce." *Id.* § 12181(7)(F).  Nothing in the record before the Court suggests that SCI Frackville and SCI Mahanoy and, by extension, the DOC, could be considered service establishments. *See Harris v. Lanigan*, No. 11-1321 (MLC), 2012 WL 983749, at *4 (D.N.J. Mar. 22, 2012) (concluding same regarding correctional facilities in New Jersey).  The Court, therefore, will only consider Plaintiff's claims pursuant to Title II of the ADA.

*Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12141 & 12132).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Third Circuit has explained that "[t]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012)). Therefore, to maintain a claim under either the ADA or the Rehabilitation Act, Plaintiff must demonstrate "that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

While the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual capacities." *Williams v. Hayman*, 657 F. Supp. 2d 488. 502 (D.N.J. 2008); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (noting that "the District Court could have properly followed the holdings of those circuits which

31

have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim"); *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 169-70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does not provide for suits against state officers in their individual capacities"). Likewise, individuals who are employees of entities who receive federal funds are not subject to individual liability under the Rehabilitation Act. *See Olschefski v. Red Lion Area Sch. Dist.*, No. 1:12-cv-871, 2012 WL 6003620, at *8 (M.D. Pa. Nov. 30, 2012). Plaintiff, therefore, cannot maintain his ADA and Rehabilitation Act claims against the individual Defendants in their individual capacities.

The Court must next consider Plaintiff's claims against the individual Defendants, as well as the DOC, in their official capacities. Under Title II of the ADA, plaintiffs may sue for prospective injunctive relief against state officials. *See Koslow v. Commonwealth*, 302 F.3d 161, 179 (3d Cir. 2002) (noting that "federal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex Parte Young* doctrine"). Moving Defendants assert that any claims for prospective injunctive relief under the ADA and Rehabilitation Act are now moot because of Plaintiff's transfer to SCI Chester. (Doc. No. 64 at 7-8.) The Court agrees with Defendants. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)

(noting that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims" for relief); *see also Reaves v. Dep't of Corr.*, 392 F. Supp. 3d 195, 210 (D. Mass. 2019) (concluding that inmate's transfer mooted his claims pursuant to Title II of the ADA and the Rehabilitation Act). Accordingly, the Court will grant Defendants summary judgment with respect to any claims Plaintiff raises seeking prospective injunctive relief under the ADA and the Rehabilitation Act.

This Court has noted, however, that "the Supreme Court has held that the Eleventh Amendment does not bar actions against state entities for monetary damages brought under Title II of the ADA for conduct that violates the Fourteenth Amendment." *Thomas v. Lawler*, No. 1:10-cv-2437, 2016 WL 4366941, at *4 (M.D. Pa. Aug. 16, 2016). Likewise, under the Rehabilitation Act, "States waive their immunity when they accept federal funds." *Haybarger v. Lawrence Cty. Adut Prob. and Parole*, 551 F.3d 193, 195 (3d Cir. 2008). Plaintiff's claims for damages against Defendants in their official capacities are, therefore, cognizable. Defendants, however, have not addressed such claims, and at this juncture, the Court cannot properly consider the issue absent briefing from the parties. Accordingly, the Court will deny the motion for summary judgment without prejudice to moving Defendants' right to file a renewed motion addressing Plaintiff's claims for damages

33

against Defendants in their official capacities under Title II of the ADA and the Rehabilitation Act.

## C.   State Law Claims

Plaintiff also raises several tort claims against Defendants pursuant to Pennsylvania state law.  (Doc. No. 5 at 1.)  Specifically, he alleges "the torts of [n]egligence, [r]ecklessness, and intentional infliction of distress."  (*Id.*)  Moving Defendants assert that the Court should decline to exercise supplemental jurisdiction over these claims.  (Doc. No. 64 at 13.)  In the alternative, Defendants state that were the Court to not dismiss all pending federal claims or decide against declining supplemental jurisdiction, the Court "should grant summary judgment in the Defendants' favor, in any event, as his 'state law' claims appear to be a mere rehashing of his federal claims."  (*Id.*)

"It is well established that in an action with both federal and state claims, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'"  *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 F. App'x 507, 511 (3d Cir. 2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  The Court, however, has not dismissed all of Plaintiff's pending federal claims, as Plaintiff's claims for damages against Defendants in their official capacities under the ADA and

Rehabilitation Act, his retaliation claim against Defendant Mros, and his claims against Defendant Pandya remain. Therefore, at this time, the Court cannot decline to exercise supplemental jurisdiction. Moving Defendants, however, have not sufficiently addressed Plaintiff's state law claims, and at this juncture, the Court cannot properly consider the issue absent briefing from the parties. Accordingly, the Court will deny the motion for summary judgment without prejudice to moving Defendants' right to file a renewed motion addressing Plaintiff's state law claims.[10]

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for an extension of time to file a surreply (Doc. No. 82) will be denied. Defendants' motion for summary judgment (Doc. No. 62) will be granted in part and denied in part. The motion will be granted with respect to Plaintiff's Eighth Amendment claims against Defendants, his claims under the ADA and Rehabilitation Act against Defendants in their individual capacities, as well as any claims for prospective injunctive relief under the ADA and the Rehabilitation Act against Defendants in their official capacities. The motion will be denied with respect to Plaintiff's claims for monetary damages against Defendants in their official capacities under the ADA and Rehabilitation Act,

---

[10] If appropriate, Defendants may reassert their request that the Court decline to exercise supplemental jurisdiction over these claims.

Plaintiff's First Amendment retaliation claim against Defendant Mros, and Plaintiff's state law claims against Defendants.  Defendants will be permitted to file a second motion for summary judgment addressing Plaintiff's remaining ADA and Rehabilitation Act claims, as well as his state law claims.  An appropriate Order follows.

<u>s/ Sylvia H. Rambo</u>
United States District Judge

Date: April 20, 2020