IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAHEEM JOHNSON,

    Plaintiff

    v.

DEPUTY TRITT, et al.,

    Defendant's

FILED
HARRISBURG, PA

JUN - 9 2021

PER____JB^
DEPUTY CLERK

No.1:18-cv-0203

(Judge Rambo)

### BRIEF IN RESPONSE TO DEFENDANT'S

### MOTION FOR SUMMARY JUDGMENT

### I. STATEMENT OF THE CASE

Plaintiff Raheem Johnson pro se, brought a §1983 Civil action. Plaintiff is an inmate in the custody of the Pennsylvania Department of Corrections currently located at S.C.I. Chester. Plaintiff filed a civil complaint on **1/2/2018**, against the Doc, Department of corrections, and various Pennsylvania Department of Corrections personnel, and Defendant, Dr. Haresh Pandya.

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. **Id**, at 248; Gray

v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3rd Cir. 1992). An issue of
material fact is genuine if the evidence is such that a reasonable jury could
return a verdict for nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local
514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3rd
Cir. 1991).

When determining whether there is a genuine issue of material fact, the court
must view the facts and all reasonable inferences in favor of the nonmoving party.
Moore v. Tarler, 986 F.2d 682 (3rd Cir. 1993); Clement v. Consol. Rail Corp., 963
F.2d 599, 600 (3rd Cir. 1992). In determining whether an issue of material fact
exists, the court must consider the evidence in the light most favorable to the
nonmoving party. White, 826 F.2d at 59.

### III. LEGAL ARGUMENT

### SUMMARY JUDGEMENT MUST BE DENIED WHERE THE FACTS SUPPORT A CLAIM FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED IN VIOLATION OF THE EIGHT AMENDMENT.

Within count 1 of plaintiff's complaint, plaintiff sets fourth that defendant
Dr. Pandya, demonstrated deliberate indifference to plaintiff's serious medical
needs and failed to provide plaintiff with Constitutionally required medical
treatment and care for plaintiff's knee dislocating and the pain associated with
condition in violation of plaintiff's right's secured by the Eight And Fourteenth
Amendments of the United States Constitution.

Plaintiff's medical records do show that plaintiff was seen multiple times.
But they don't say that most of them times were because of plaintiff's request
and/or grievances. Which Plaintiff filed on a continuing basis. See, Exhibits (a)
through (r) attached to complaint. It wasn't until plaintiff fell several times
causing further injury and after filing several grievances did Dr. Pandya place
plaintiff in for Therapy, and then granted plaintiff a MRI, braces and the

appropriate assistive device, then placed orders to have plaintiff transferred to a single level facility, after plaintiff had already further injured his self, and adored unbearable pain, and being denied to eat in dinning hall, or to take a shower without the risk of permanent injury for over a year.

Its true that in order to state a claim against a Correctional health care provider under **42 U.S.C. §1983**, Plaintiff must prove "deliberate indifference to a serious medical need". The defendant's also argue that plaintiff claim should not be analyzed as a substantial due process claim under the Fourteenth Amendment.

However, Their argument must fail, as in, **Evans v. Rozum, No. 07-2301, 2008 U.S.Dist.Lexis 95432, 2008 WL 5068963, at. *8 n.7 (W.D. Pa. 2008)**, "the standards under the Eight Amendment and the standards under the Fourteenth Amendment claims based on conditions of his confinement together", See also; **Natale, 318 F.3d at. 581-82** (noting that the same standard may be applied to evaluate inadequate medical care claims under the Eight and Fourteenth Amendment).

The defendant's on pg. 9 of their brief states that plaintiff denied pain meds. This note in plaintiff's file is false. As plaintiff continued to ask for pain medication and wrote sick call request, and grievances. Which are the very same reasons why plaintiff was seen by medical as many times as plaintiff was, and each time Dr. Pandya denied plaintiff said relief of pain. See, Exhibits (a) through (r) attached to complaint. If its said to be true that plaintiff denied medication why just mere weeks later, on **2-4-16;** was plaintiff given medication, by the same person who falsely wrote that plaintiff denied medication? Plaintiff again filed another sick call weeks later still being in pain from left knee dislocating continuingly each time plaintiff was forced to walk up and down the hill to and from any place. On, **2-26-16;** plaintiff was once again given medication **325mg** of Acetaminophen to be taken with the **50mg** of Diclofenac plaintiff was prescribed by Mr. Iannuzzi.

Thus, it can't be said that on January 12, 2016; plaintiff didn't want any pain medication, when that's the main reason plaintiff filed a sick call request to be seen by medical. To further prove that plaintiff was in pain. Defendant's state that on January 15, 2016, just 3-days after it was said plaintiff denied meds. Plaintiff was seen by Dr. Pandya to discuss several issues, including his **"Chronic Knee Pain"**. Which Johnson complained of **"Chronic Pain"**. See; pg.9 of defendant's brief. Notably Dr. Padya rather then give plaintiff pain medication the defendant gave plaintiff a order for Vitamin D Supplement.

Plaintiff did receive a walker, and said walker was not given for a period of one year as the notation in medical chart states. To prove that Dr. Pandya and his staff was falsifying plaintiff's records as well as other's. See, Items Receipt for walker, which clearly states walker was **"Permanent"** See Exhibit (a) Attached to complaint. Also telling is that Mr. Iannuzzi states in plaintiff's medical record that on February 4, 2016, that "Mr. Johnson deferred an examination at the visit". But the notes detail an examination. The defendant's record proves their own statements are false. Again on March 8, 2016, Mary Alice Kuras, wrote in plaintiff's medical file that "Mr. Johnson was seen walking from the compound with walker in his hands, but not using it for assistance". If this was true, how is it that no one could prove it to be true when plaintiff filed grievance in regards to Kuras falsifying plaintiff's medical records, plaintiff requested video footage be shown, all to no avail. On April 4, 2016. Plaintiff was seen by Dr. Pandya after plaintiff filed another sick call request as plaintiff was in pain, and couldn't shower without a handicap accessible shower, and or just a chair. Dr. Pandya noted in plaintiff's file that plaintiff had refused exercise papers.

However, in June plaintiff was seen by Dr. Pandya for Hypertension. The defendant stated plaintiff had poor motivation to improve muscle strength, but that Dr. Pandya provided plaintiff with exercises to do, to build up muscle

strength to assist with plaintiff's knees pain. Plaintiff ask this Honorable court
to take notice that the records placed into evidence conflicts with each other.
The defendant Dr. Pandya, as far back as October 5, 2016, noted that, "Plaintiff
was mobility impaired". On January 31, 2017, its stated that CHCA Holly Authored a
progress note following a discussion with plaintiff. However its said that Dr.
Pandya had the same discussion and we know its not true as Holly states, at that
time he reports no incidents of falling. See, Exhibits (a) through (r) attached to
complaint. On January 31, 2017, Dr. Pandya wrote in plaintiff's medical file, "Mr.
Johnson should be in a one level facility with flat ground or all indoors to
eliminate weather related issues.

On February 3, 2017, the X-rays of both of plaintiff's knees showed mild
degenerative changes with **"soft tissue swelling"** and joint effusions. Which proves
that there was some type of injury that **"Soft Tissue"** had swelling. Plaintiff now
points to, February 6, 2017, where Dr. Pandya reviewed the results of X-Rays, and
noted that "these were expected changes" Plaintiff points to this to show that the
defendant Dr. Pandya, didn't need a knee expert or specialist to know that
plaintiff was in pain and that what Dr. Pandya was doing to plaintiff was wrong.
Dr. Pandya knew that the longer he kept plaintiff in a non handicap accessible
prison the worst plaintiff condition would get knowing that each time plaintiff
came out side to go to and from any place plaintiff's knees would dislocate and/or
place plaintiff in unbearable pain.

The defendant's argue that during plaintiff's year and half at Frackville,
plaintiff was seen 19 times. A look back at plaintiff's medical records will prove
that plaintiff had already had bottom bunk status, and that Dr. Pandya didn't do
any thing until after plaintiff fell several times and filed several grievances.
The defendant's argue that plaintiff "regularly mentioned pain in his knees during
subsequent medical appointments, the medical records do not suggest that he asked

for and was denied pain medication". However out of the 19 times plaintiff was seen plaintiff filed a sick call request, and/or a grievance and was seen. Thus, Dr. Pandya or no other defendant's saw plaintiff without plaintiff complaining first. On 2-4-2016, plaintiff filed a sick call for pain and needing a chair in order to take a shower. Mr. Ianzzui, prescribed plaintiff 50mg of Diclofenac, to be taken twice daily. 2-weeks latter plaintiff filed another sick call in regards to pain and needing a handicap accessible shower, or chair. Mr. Ianzzui added Actamiophan 325mg, twice a day to be taken with the 50mg. As a result of plaintiff continuing to file sick call and grievances against defendants. Dr. Pandya retaliated by not renewing plaintiff's medications. The defendant's next argue that "Primarily, it should be noted that Mr. Johnson was never prescribed a (Permanent Walker) Rather, he was prescribed a walker for a period of one year". Once again the defendant's are creating a false record. See, Exhibit (a) Items receipt for walker, attached to complaint. Which proves again that plaintiff is telling the truth and the walker was in fact "PERMANENT" until plaintiff started filing request and grievances. The defendant's now state that it was a reasoned medical decision made by Dr. Pandya after Mr. Johnson was observed walking from the compound with walker in his hands. Plaintiff grievanced said report See response, Exhibit (G) attached to complaint Stating, "on 3-8-16, you were noted not to be utilizing the walker instead you were ambulating in the compound with a cane. The walker was discontinued and you are to utilize the cane" Again proving that the defendant's are again falsifying the record. See, Medical records attached to defendant's brief. Specifically on, March 8, 2016, "Mr. Johnson was seen walking from the compound with his walker in his hand, but not using it for assistance". Now this Honorable court see first hand what plaintiff have been going through as the defendant's are willing to defraud the court with false records and statements. Plaintiff medical records prove that either way it was

impossible for plaintiff to hold a walker in hand and walk up a hill with two knees dislocating. On the other hand plaintiff wasn't given a cane until after the walker was removed. See, Exhibit (c) attached to complaint. The defendant's go on to acknowledge that on **April 21, 2017;** that "Plaintiffs physical therapist recommended a possible consult with an orthopedic physician" Stating, "This was simply a recommendation by his physical therapist". Dr. Pandya sent plaintiff to the therapist for the therapist recommendation and accepted everything the therapist recommended except for pain reducing regime and sending plaintiff to a Orthopedic surgeon.

Even before, the Therapist made a recommendation for plaintiff to see a surgeon, plaintiff filed grievance #620164, on **4-4-2016;** Exhibit (d) attached to complaint. Pointing out that it was already noted that it was nothing else to be done for plaintiff left knee besides to send plaintiff to see a "Patellofemoral Expert". On, **4-26-2016,** defendant Holly responded, See, Exhibit (D) attached to complaint. Rather then accept the recommendation of therapist or of Orthopedic surgeon Dr. Greer. The defendant's state that plaintiff received , an MRI of both knees on **May 5, 2017.** Mr. Johnson was transferred to S.C.I. Mahanoy shortly thereafter, and therefore, no longer under the medical care of Dr. Pandya".

The defendant's fail to note that plaintiff was still under the care of Dr. Pandya for another two Months or up and until **July 12, 2017;** and Dr. Pandya continued to deny plaintiff pain medication, and to even schedule a consult with a "Patella Expert", even after recommendations from Greer, and Therapist. On plaintiff's first visit to see therapist plaintiff was self limiting as plaintiff was in to much pain from last fall. The record supports that Dr. Pandya ignored Recommendations, from out side sources to set plaintiff up to see "Patella Expert". The defendant's argument is misplaced as to plaintiff being dissatisfied with the medical care plaintiff requested and didn't receive. Plaintiff argument

is that Dr. Pandya had a duty to make sure that plaintiff a inmate with disabilities and mobility impaired if not allowed to see a Patella Expert, then at the very least, accommodate plaintiff with a transfer to a handicap accessible facility, and or give plaintiff a chair to utilize in order to shower, at the very least the Defendant's and Dr. Pandya had a duty not to with hold medication due to plaintiff filing request and grievances. Thus, minimizing plaintiff's pain, injuries, and suffering. Even if the defendant's and Dr. Pandya believe that they didn't have a duty to recommend plaintiff to "Patella Expert" the law may say different. See, <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3rd. Cir. 1999) "reiterating that deliberate indifference may be demonstrated by denying, delaying or preventing a prisoner from receiving needed or recommended medical treatment". As explained in, <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004), "that the Estelle "deliberate indifference to serious medical needs "Standard is clearly met when a doctor is "intentionally inflicting pain on [a] prisoner []" 897 F.2d at. 109. See also, <u>Monmouth County Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987) "Where prison authorities deny reasonable request for medical treatment...and such denial exposes the inmate to undue suffering or the threat of tangible residual injury,".

Plaintiff requested pain medication at each visit and was denied to have medication renewed, by Dr. Pandya, to receive medication for pain. Plaintiff filed grievances and each grievance that was denied was appealed to exhaustion. See; Exhibits (a) through (r) attached to complaint. Further more plaintiff suffers from (Chronic Pain) "Chronic pain refers to pain that persist after an injury heals,...Pain related to a persistent or (degenerative disease), and long term pain from an unidentified cause". The Gale Encyclopedia of Medicine, **Vol. 4. 2142.** Each visit with Dr. Pandya plaintiff was seen for complaints of Chronic pain in knees, besides when plaintiff was seen for Hypertention. All request were denied.

Therefore, Dr. Pandya, left plaintiff in Chronic pain with no relief in sight. Plaintiff filed grievance's placing Dr. Pandya and the Doc on notice of all violations of plaintiff's Constitutional right's. See, **Lavender v. Lampert, 242 F.Supp. 2d 821, 845 (D. Oreon 2002)**;"noting that the existence of chronic pain is it self a serious medical need and "any reasonable official would understand that to deny or delay treatment for such pain... Would Constitute deliberate indifference to a serious medical Condition...".

The defendant's argue that "Dr. Pandya used his Professional medical judgment to make treatment decisions regarding how to best treat Mr. Johnson's knee Pain/condition". The defendant's knew plaintiff was in chronic pain, as did Dr. Pandya which has been made clear from the record attached to defendant's brief. However, plaintiff was still denied medical treatment for his pain. Dr. Pandya read plaintiff's last MRI results and Dr. Greer, report dated, 7-25-2012; See, Exhibit(3) attached. Said report inform Dr. Pandya that plaintiff needed to be treated (Symptomatically with Oral anti-inflammatories, bracing and physical therapy) That report at that time was 4years old, and didn't take into account that plaintiff would be subjected to going up and down a hill. Even more so in that same attached report it was stated that"Certainly there are Patellofemoral experts in the Country such as John Fulkerson at the University of Connecticut that may be able to offer an opinion, however, it is my feeling that he would not do well with any surgery" Dr. Greer was not a Patella Expert and gave his opinion 4 years prior before plaintiff was subjected to having both of his knees dislocating by going up and down a hill. If it was suggested that plaintiff should see a Patella Expert 4 years prior. What would make Dr. Pandya think any thing else? Thus, it can't be said that the defendant's and Dr. Pandya wasn't aware that Plaintiff should see a Patella Expert. Even more telling is that the Therapist

made the same recommendations to Dr. Pandya and Dr. Pandya and the defendant's disregarded all recommendations.

This further proves plaintiff's argument that the defendant's and Dr. Pandya with held pain medication in retaliation for plaintiff on going grievances and request. The record before the court proves that plaintiff was in pain, plaintiff had swelling, and that plaintiff was in need of seeing a (Patella Expert). See; West v. Keve, 571 F.2d 158, 162 (3rd. Cir. 1978) "denial of access to a doctor capable of assessing the need for post operative treatment stated a Constitutional claim". White v. Napoleon, 897 F.2d 103, 106, 110 (3d. Cir. 1990) "Prison doctor disregarded instructions of prior doctor". See also; Durmer v. O'Carroll, 991 F.2d 64, 68 (3d. Cir. 1993) "Defendant ignored recommendations from outside doctor and prison specialist that plaintiff receive physical therapy". Dr. Pandya had a duty to relieve plaintiffs pain and at the very least to accept the recommendations of the person that Dr. Pandya and the defendant's sent plaintiff to see in order to get his recommendation. Lavender v. Lampert, 242 F.Supp. 2d 821, 849 (D.OR. 2002) "Allegation that prisoner with sever orthopedic problems was housed in hilly Terrain that exacerbated them raised a factual issue of deliberate indifference". The Supreme court has stated that "deliberate indifference to serious medical needs of prisoners Constitutes the Unnescessary and wanton infliction of pain as prescribed by the Eight Amendment" Estelle v. Gambel, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).


Plaintiff suffered from chronic pain, and the Dr. Pandya refusal to treat pain is a serious medical need. The deliberate indifference standard requires a plaintiff to show that the defendant's had knowledge of an objective cruel condition (and medical cases, a serious medical need) and did not respond reasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970

(1994).

Plaintiff suffered with Chronic pain for over a year due to Dr. Pandya refusal to treat plaintiff with medication.

Therefore; plaintiff's claim does rise to the level of "Cruel and unusual Punishment" which would constitute a violation of the Eight Amendment. Accordingly, Summary judgment should be granted in plaintiff's favor.

B.   SUMMARY JUDGMENT MUST BE GRANTED WHERE PLAINTIFF HAS MAINTAINED A CLAIM AGAINST DR. PANDYA UNDER THE ADA AND/OR REHABILITATION ACT


Plaintiff was denied pain medication, and accommodations, even after plaintiff fell several times in the shower trying to take a shower while on crutches in a non-handicap accessible facility. The defendant's and Dr. Pandya still continued to deny plaintiff's cry's for pain relief, and reasonable accommodations. The record before the court proves that plaintiff requested pain medication, a handicap accessible shower, to be transferred to a handicap accessible facility each time plaintiff was seen by Dr. Pandya and each time plaintiff's reasonable request were denied. **Frost**, 152 F.3d at. 1129. "Prison officials were deliberately indifferent where they knew plaintiff fell several times using crutches in the shower and did not provide accommodations" See also; **Muhamad v. Department of Corrections**, 645 F.Supp. 2d 299, U.S. Dist. Lexis. 92149 (2008) "This is especially so where plaintiffs condition rendered the shower facilities in accessible to him, forcing him to make the choice between encountering risk of further injury and taking no shower at all. where defendant's alleged indifference to plaintiff's plight continued for five month's, upon the view of the evidence most favorable to plaintiff an Eight Amendment violation may be shown at trial".

The defendant's and Dr. Pandya had the authority to accommodate plaintiff's disability. Plaintiff made several request over a year and a half to be accommodated with a handicap accessible shower, a shower chair, a chair to utilize to use the phone, a transfer to a handicap accessible facility to enable plaintiff to walk on flat ground to and from dinning hall in order to eat meals. Plaintiff's request were all denied, and plaintiff appeal all grievances to no avail. Plaintiff has been excluded from participating in and denied the benefits of a public entity's service, and programs. See, Kiman, 451 F.3d 287, "Disabled inmate denied access to a shower chair or accessible shower after repeated request stated a claim under the ADA and Rehabilitation Act".

The defendant's or Dr. Pandya doesn't dispute that plaintiff requested reasonable accommodations as the record before this court supports plaintiff's claim. The defendant's also failed to make a fact specific investigation to determine what Constitutes a reasonable accommodation, or even mention it in their motion. See, Mooring v. Dep't of Corrections, and Rehab, No. 2:14-cv-1471 MCF KJN, 2015 U.S. Dist. Lexis. 140098, 2015 WL 6163449 at. 4 (E.D.Cal. Oct 14, 2015) "Defendant's failure to even mention a fact-specific investigation in their motion makes Summary Judgment on plaintiff's ADA claims inappropriate". Accordingly Summary Judgment should not be granted to the defendant's or Dr. Pandya.

C.  SUMMARY JUDGMENT MUST BE GRANTED IN PLAINTIFF'S FAVOR WITH REGARDS TO PLAINTIFF'S CLAIMS UNDER THE PENNSYLVANIA CONSTITUTION AS PLAINTIFF IS ENTITLED TO MONETARY RELIEF AND PLAINTIFF REQUEST FOR INJUNCTION RELIEF IS MOOT

Plaintiff's State Law claims under Color of state Law under the Pennsylvania

Constitution for monetary damages does not fail as a matter of law. As this honorable court has Supplemental jurisdiction over plaintiff's state law claims, under 28 U.S.C. § Scetion 1367, Which was decided in, **Monroe v. Pope**, 365 U.S. 167 (1961).

Plaintiff may also sue a private citizen, such as Dr. Pandya as the defendant's and doctor mistreated and retaliated against plaintiff while he was working for prison officials. See, **West v. Atkins**, Holding: "that a private doctor with whom the state contracts to provide treatment to prisoners can be sued using section 1983.

## D. SUMMARY JUDGMENT MUST BE DENIED WHERE THE FACTS SHOWS DR PANDYA EXHIBITED CONDUCT AMOUNTING TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Dr. Pandya, Intentionally denied plaintiff pain medication for over a year. Dr. Pandya continued to deny plaintiff pain relief, to be transferred to a handicap accessible facility, a handicap accessible shower, and a chair to utilize to shower or use the phone for more then a year. Plaintiff filed grievance after grievance sick call after sick call, and request after request, as well as an "ADA REQUEST" to the defendant's and Dr. Pandya. The defendant's state that plaintiff denied pain medication. The record has proved this to be false already. As on 1-12-16, Mr. Iannuzzi wrote Mr. Johnson stated that he didn't want any pain meds and he won't take them. However, plaintiff was refused pain medication, and on, 1-29-16, when plaintiff complained about his pain. Mr. Iannuzzi informed plaintiff that he had a Vitamin D. deficiency, and was prescribing (Cholecalciferol). and would have to talk to Dr. in regards to giving plaintiff pain medication. On, 2-4-16, plaintiff just days after seeing Iannuzzi, filed another sick call seen by Iannuzzi, and was prescribed 50mg of Voltaren to be taken twice daily for pain.

Plaintiff continued to be in pain from going up and down the hills at Frackvill in order to eat or go any place, filed another sick call days later, on 2-26-16, and was prescribed 325mg of Tylenol to be taken with the 50mg prescribed just days before due to plaintiff's newly fall in the shower after not being accommodated by the defendant's or Dr. Pandya. Therefore, the defendant's argument that plaintiff refused medication can easily be refuted by reviewing Exhibit(b) attached to brief, placed into the record via the defendant's. Which is a copy of EHR Clinical report.

Furthermore; plaintiff suffers from a known disability that the defendant's and Dr. Pandya acknowledged, and still continued to refuse plaintiff all reasonable accommodations forcing plaintiff to suffer from chronic pain and permanent injuries.

The defendant continued this course of misconduct of refusing to renew plaintiffs pain medication, and/or to provide plaintiff with pain medication, leaving plaintiff in pain, unable to go to dinning hall to eat, shower, or utilize phone without the risk of injury. See, **Miller v. Hoffman,** 1999 U.S. Dist. Lexis 9275, *22 (E.D. Pa. June 21, 1999) (noting that Pennsylvania court's have also indicated that they will be more receptive to find outrageous conduct and permit recovery in [IIED] cases where... there is a continuing course of conduct);

In the instant case the defendant's and Dr. Pandya, misconduct went on for a year and a half. The evidence of record proves that plaintiff was seen several times by medical most of the times were because plaintiff filed sick calls or due to plaintiff's grievances or request to staff. Dr. Pandya had a duty to have plaintiff transferred to a handicap accessible facility rather then continuingly to place plaintiff in risk of permanent injury, pain and suffering. During all relevant times Dr. Pandya continued to deny plaintiff request for accommodations and pain medication. Its stated that Dr. Pandya gave plaintiff Vitamin D

supplement instead of pain medication, on pg 30 of defendant's brief. Further
supporting the disregard Dr. Pandya had for plaintiff his disability and pain. The
defendant's go on again to say, "Dr. Pandya used his medical judgment to prescribe
the treatment that he believed was best for Mr. Johnson"

Thus, Dr. Pandya medical judgment was to continue to force plaintiff in undue
pain, by continuing to deny plaintiff pain medication, and a transfer to a
handicap accessible facility, a chair to utilize to shower in or use the phone,
continue to force plaintiff to walk up and down the hills while on crutches with
two knee braces for a year and a half. Dr. Pandya after a year and a half of
plaintiff filing grievances, and request, and informing the defendant's plaintiff
was going to sue finally placed a order to transfer plaintiff to a handicap
accessible prison. However, until the bitter end Dr. Pandya and the defendant's
continued to refuse plaintiff any pain relief for his Chronic pain and
degenerative condition.

Therefor; any reasonable fact finder could conclude that Dr. Pandya and the
defendant's, and Doc, "Reckless" "Outrageous" and "Extreme" punishment, and
retaliation of plaintiff could be considered to have caused plaintiff sever
emotional distress.

Its inconsistent with the Eight Amendment for a prison official to with hold
treatment from an inmate who suffers from a serious, chronic disease until the
inmates condition significantly deteriorate. See, **Jehovah v. clarke, 798 F.3d 169,
181-82 (4th Cir. 2015), See also; Fields v. Smith, 653 F.3d 550, 556 (7th Cir.
2011) Holding:** "Refusing to provide effective treatment for a serious medical
condition serves no valid penological purpose and amounts to torture". "With
regards to the element of outrageous, it is for the court to determin in the first
instance whether the defendant's conduct may reasonably be regarded as so extreme

and outrageous to permit recovery" <u>Johnson v. Caparelli</u>, 425 Pa. Super. 404, 625 A.2d 668, 671 (Pa. Super. 1993).

Plaintiff as of this date has continued to suffer from chronic pain, and has been being treated continuingly for pain since plaintiff been at this facility. Plaintiff takes "Tramadol 100mg three times a day until plaintiff receive recommended bilateral knee surgery, as plaintiff was seen by "Patella Expert" on 3-2-2020. Right before covid started. Plaintiff was forced to suffer for years in pain by the defendant's and has been suffering not just physical but emotionally.

All plaintiff's pain and suffering was due to the defendant's and Dr. Pandya refusal to treat plaintiff with pain by refusing to renew, and/or order plaintiff pain medication and the failure to transfer plaintiff to a handicap accessible facility, grant plaintiff a chair to utilize while showering and to utilize the phone. Thus, the record before this Honorable court supports Plaintiff's claim of "IIED".

The defendant's next argue that plaintiff lack the expert testimony needed. However, the law do relieve plaintiff of the responsibility of offering medical testimony where the negligence of the physician was so obvious that it would be ascertained by the layman. The only exception to this otherwise invariable rule is in cases where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even non professionals (Persons) <u>Lambert v. Soltis</u>, 422 Pa. 304, 308, 221 A.2d 173, 175 (1966).

Therefore, under the doctrine of **"res ipsa loquitur"**, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) **the event is of a kind which ordinarily does not occur in the absence of** negligence, (b) other responsible causes, including the conduct of the plaintiff

and third persons are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff. It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn. It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may be reasonably be reached.

"The exception to the requirement of expert testimony in medical malpractice actions applies where the matter is so simple or the lack of skill or care is so obvious as too be within the range of experience and comprehension of even non-professional persona". **Jones v. Harrisburg Polyclinic Hospital**, **496 Pa. 465, 471, 437 A.2d 1134, 1137 (1998)**.

Therefore, Summary Judgment must be entered against Dr. Pandya and the Defendant's as to Plaintiff's claim for Intentional Infliction of Emotional Distress.

**E.    SUMMARY JUDGMENT MUST BE DENIED TO DR. PANDYA AS TO PLAINTIFF'S PROFESSIONAL NEGLIGENCE CLAIM BECAUSE PLAINTIFF DOESN'T HAVE TO PRODUCE "A EXPERT" REPORT UNDER RESTATEMENT (SECOND) OF TORTS § 328 D (1965).**

Plaintiff agrees that most cases require expert testimony to establish medical negligence. However, **"res ipsa loquitur"** can substitute for expert testimony. As in the instant case "res ipsa loquitur" can remove the need to establish the standard of care through expert testimony as, "res ipsa loquitur" is to aid plaintiff in making out a prima facie case of negligence against Dr. Pandya. See; **Smith v. City of Chester**, **357 Pa. Super. 24, 515 A.2d 303 (1986)** Holding: "The rationale behind this doctrine is to aid plaintiff's in making a prima facie case of negligence against defendant's by allowing an inference of negligence to be

deduced from competent evidence on the theory that in the course of ordinary events, the injury or damage complained of would not have occurred in absence of negligence".

In the instant case plaintiff has proffered that Dr. Pandya for a year and a half refused to renew or give plaintiff medication to relieve "CHRONIC PAIN" which left plaintiff unable to go to dinning hall for over a year, take a shower without risk of injury, use the phone without risk of injury. The defendant also denied plaintiff for a year and a half to be transferred to a handicap facility, and a facility in which plaintiff could walk on flat ground. Specifically a single level prototypical facility leaving plaintiff to suffer day and night as plaintiff's knees would dislocate each day plaintiff had to leave the unit. Plaintiff has proffered only relevant evidence which would be obvious to any lay person as can be determined by the court. Section 328 D, provides two avenues to avoid the production of direct medical evidence of the facts establishing liability. One being the reliance upon common lay knowledge that the event would not have occurred without negligence, and the second, the reliance upon medical knowledge that the event would not have occurred without negligence,

However, prior law did in fact relieve plaintiff of the responsibility of offering medical testimony where the negligence of the physician was so obvious that it would be ascertained by the layman. 9. "The only exception to this otherwise in variable rule is in cases where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons." Lambert v. Soltis, 422 Pa. 304, 308, 221 A.2d 173, 175 (1966); Demchuk v. Bralow, 404 Pa. 100, 104, 170 A.2d 868, 871 (1961); Robinson v. Wirts, 3877 Pa. 291, 296, 127 A.2d 706, 710 (1956) (emphaisi in Original).

Thus, under a res ipsa loquitur theory of liability, it may be inferred that the harm suffered is caused by the negligence of the defendant when: (a) the event is of the kind which ordinary does not occur in the absence of negligence; (b) other responsible cause, including conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

The evidence proffered any nonprofessional person could tell was negligence without no skill at all. Jones v. Harrisburg Hospital, 496 Pa. 465, 471, 437 A.2d 1134, 1137 (1981) "The exception to the requirement of expert testimony in medical malpractice actions applies where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non professionals persons".

Thus, Plaintiff may proceed to trial under res ipsa loquitur, and prove a prima facie case of medical negligence, and summary judgment must be granted in plaintiff's favor.

F. DR. PANDYA IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S EVIDENCE DEMONSTRATES A ISSUE OF MATERIAL FACT TO SHOW THAT DR. PANDYA RETALIATED AGAINST PLAINTIFF.

The defendant's are correct that plaintiff's pain medication was stopped by Dr. Pandya after being prescribed for (30) days. Dr. Pandya then refused to renew plaintiff pain medication, due to plaintiff filing request to staff and grievances. Plaintiff was denied pain medication from that date fourth. Plaintiff proffer's record supportive evidence in order to prevail on his retaliation claim. On, 2-24-16; plaintiff wrote to Superintendant Tritt, in regards to having problems with the facility and trying to have disability accommodated by Dr.

Pandya, and informing her that staff continues to give plaintiff problems about
disability and having walker. There after that request. On, **3-4-2016;** a week later
plaintiff's medication needed to be renewed but Dr. Pandya did not do so. And On,
**3-26-2016,** plaintiff's Tylenol needed to be renewed, Dr. Pandya refused. 9 days
later; On, **4-4-2016;** 30 days after. Dr. Pandya then removed plaintiff from walker
which was suppose to be permanent . See, Exhibit (a) items receipt attached to
complaint for proof of walker being permanent despite defendant's stating that it
wasn't. Plaintiff's evidence proves otherwise. On that very same day, **4-4-2016,**
Plaintiff filed grievance#620164, attached to complaint as Exhibit (e). In said
grievance plaintiff made it known that he was being denied pain medication, as
well as accommodations as handicap accessible shower, or shower chair, and to be
transferred to a handicap accessible facility. Grievance was denied and plaintiff
appealed. On, **10-13-2016,** The chief grievance officer, upheld all denials stating
in part "They reviewed the medical record and determined that the medical care
being provided is reasonable and appropriate."

  Plaintiff proffers that he suffered from Dr. Pandya adverse actions in being
denied pain medication, a Transfer to a handicap accessible facility, a chair to
utilize to shower, and to utilize the phone. The record proves that Dr. Pandya
only denied plaintiff pain medication to be renewed, removed plaintiff's permanent
walker after plaintiff started to complain by writing request, and grievances.
Plaintiff had a right to file grievances and request against defendant's and Dr.
Pandya.

  Suggestive Temporal Proximity between the protected activity and the alleged
retalitory action or pattern of antagonism couple with suggestive timing, On, **3-4-
2016,** and **3-26-2016;** the retalitory action occurred, just **(8) days,** after
plaintiff wrote request to Superintendant Tritt about having problems. The first
medication was denied, and **(22) days** after the first was the second medication

Tylenol. Plaintiff had and has a right to be free from pain, suffering, and to be accommodated for disabilities. The only reason for Dr. Pandya denying plaintiff pain medication, and reasonable accommodations for disabilities was **"Retaliation"** for plaintiff writing request, and filing grievances. On, **2-15-2017;** plaintiff again fell in shower and wrote medical Ms. Holly, See, Exhibit ( ). In regards to plaintiff fall in shower. On, **2-17-2017,** Plaintiff inform the therapist of fall as well. On, **2-22-2017,** Plaintiff saw Dr. Pandya and inform him of fall and that he didn't have the funds to continue to pay for medical each time he is hurt trying to shower and that plaintiff needed pain medication for pain. Plaintiff was given only new brace and sent back to unit. Dr. Pandya continued to deny plaintiff reasonable accommodations and pain medication for filing grievances and request. On, **2-24-2017,** Plaintiff filed grievance# **666609.** Addressing being in pain and the defendant's denial of accommodations. Plaintiff exhausted all grievances to no avail. On, **4-13-2017,** Plaintiff again filed another grievance in regards to falling again in the shower a day earlier on **4-12-2017,** and Dr. Pandya continued his retaliation by continuing to deny plaintiff pain medication, a handicap accessible shower, a shower chair, and to be transferred to a handicap accessible facility to enable plaintiff to walk on flat ground which stop plaintiff's knees from dislocating when leaving the housing unit. See, Exhibit (d) attached to complaint.

Thus, it can't be said that plaintiff failed to show a suggestive Temporal Proximity between the protected activities and the alleged retalitory action or pattern of antagonism coupled with suggestive timing, as in one of the instances it was a matter of **(8) days,** in another it was **(22) days,** and so on to suggest a pattern of antagonism.

As can be seen from record supportive evidence, Dr. Pandya retaliated against plaintiff, and a clear pattern has been shown of antagonism as plaintiff was never

again given any more pain medication for the rest of plaintiff's year and a half that plaintiff remained in facility under Dr. Pandya care. The retalitory actions occurred, and can be seen by plaintiff's Exhibits (a) through (r) attached to complaint. See, Suppan v. Dadona, 203 F.3d 228, 235 (3rd. Cir. 2000) (Retalitory motive can be inferred from either (1) an unusually suggestive Temporal proximity between the protected activity and the alleged retalitory action; or (2) a pattern of antagonism coupled with timing that suggest a causal link Id. (citing, Lauren W.ex. rel Jean W. V. Deflaminis, 480 F.3d 259, 267 (3rd. Cir. 2007) Plaintiff has satisfied the requirements of, Rauser v. Horn, 241 F.3d 330, 333 (3rd. Cir. 2001); Holding: "Prisoner must allege Constitutionally protected conduct, adverse action, and a causal link between the two". See also; Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004) " To state a valid claim for retaliation, an inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred". (Citation and internal quotation marks omitted).

Thus, there can be no doubt that plaintiff suffered from a adverse action due to retalitory conduct at the hands of Dr. Pandya and defendant's Doc, as plaintiff was continuingly denied pain medication, to have pain medication renewed. Due to plaintiff filing on going request and grievances against Dr. Pandya and the defendant's. Plaintiff concedes that Dr. Pandya continuingly seen plaintiff each time plaintiff filed a sick call request, and or in response to grievances, only to continue a course of treatment that left plaintiff in pain. This continued even after the Physical Therapist requested Dr. Pandya to place plaintiff on a (Prednisone Regime). See, Exhibit ( ) Attached to brief. Rauser, 241 F.3d at. 333 (Citations Omitted); "The prisoner satisfies the adverse action requirement by "demonstrating that the action was sufficent to deter a person of ordinary

firmness from exercising his [Constitutional] right's". Id. (quoting; Allah v. Selverling, 229 F.3d 220, 225 (3rd. Cir. 2000). Thus, Accordingly, Dr. Pandya should not be granted Summary Judgment as to plaintiff's retaliation claim.

## IV. CONCLUSION

WHEREFORE; the above reasons and based upon the foregoing facts of record and case law. Plaintiff, Raheem Johnson, pro se Respectfully, request that this Honorable Court deny Dr. Pandya, the defendant's and Doc, Motion for Summary Judgment on all count's in the interest of justice.

Respectfully submitted;

Raheem Johnson pro se

GR-6739

S.C.I. Chester

500 East 4th Street

Chester Pa 19013

<u>CERTIFICATE OF SERVICE</u>

I, Raheem Johnson, pro se Plaintiff, hereby certify that on this date **6/3/2021;** served a true and correct copy of the forgoing, RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT upon the following by first class mial.

Caleb C. Emerson, Esq.

15th Floor Strawberry Square

Harrisburg, PA 17120

Meghan K. Adkins Esq.

Four PPG Place

5th Floor

Pittsburg, PA 15222

Sylvia H. Rambo

228 Walnut Street

P.O. Box 983

Harrisburg, PA 17108

**Respectfully submitted;**

**Date.6/3/2021.**

**Raheem Johnson**